UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,            Case No. 17-12356-t11

    Debtor.

METROPOLITAN LIFE
INSURANCE COMPANY,

    Plaintiff,

v.                                                       Adv. Pro. No. 18-1007-t

LAS UVAS VALLEY DAIRIES and
UNSECURED CREDITORS' COMMITTEE OF
LAS UVAS VALLEY DAIRIES,

    Defendants.

## OPINION

Before the Court are cross-motions for summary judgment on the avoidability of Plaintiff's mortgage lien on water rights. The sole issue is whether Plaintiff properly perfected its lien by filing its mortgages in the proper counties, or whether it had to comply with a statute relating to changes in water rights ownership. Having considered the summary judgment papers and the parties' briefs and oral argument, the Court finds and concludes that Plaintiff was not required to comply with the water rights change of ownership statute. Even if it were, its failure to do so would not render its lien avoidable.

I.     FACTS

Solely for the purpose of ruling on the cross motions for summary judgment, the Court finds that the following facts are not in genuine dispute:

Las Uvas Valley Dairies owned and operated a large dairy and farm in southern New Mexico. It filed this chapter 11 case on September 15, 2017.

The United States Trustee's office appointed the Unsecured Creditors' Committee (the "Committee") on November 2, 2017. On February 14, 2018, Met Life filed this adversary proceeding. The Committee intervened and filed a counterclaim. On June 14, 2018, the Court confirmed a plan of liquidation that, inter alia, allows this adversary proceeding to continue.[1]

Met Life has a $27 million claim against Debtor, secured by mortgages on substantially all Debtor's real estate. The loan documents and collateral include:

- 2012 Note and Mortgage. In December 2012 Met Life loaned Debtor $20 million to buy the "Columbus Farm" in Luna County, New Mexico. The loan was secured by a mortgage, assignment of rents, security agreement and fixture filing (the "2012 Mortgage"), encumbering the Columbus Farm and real property in Dona Ana County, New Mexico, together with all related water rights, improvements, certain equipment, accounts, and other property. The 2012 Mortgage identifies certain of the encumbered water rights by water permit number.[2] The 2012 Mortgage was filed in Luna and Dona Ana counties.

- 2013 Note and Mortgage. In August 2013 Met Life loaned Debtor $5,650,000, secured by a mortgage, assignment of rents, security agreement and fixture filing (the "2013 Mortgage") encumbering property in Dona Ana County, New Mexico. The 2013 Mortgage, which was recorded in Dona Ana county, is not part of the record.

- 2016 Note and Mortgage. In February 2016 Met Life renewed and extended both loans and also loaned more money, so the total indebtedness grew to $38 million, secured by

---

[1] The Committee is now a liquidation committee rather than an unsecured creditors' committee.
[2] The Court is not ruling on the adequacy of the description of water rights in the mortgages, nor what water rights Debtor owns. If there is a dispute about these issues, it is reserved.

-2-
Case 18-01007-t    Doc 33    Filed 03/08/19    Entered 03/08/19 16:09:43 Page 2 of 14

a mortgage, assignment of rents, security agreement and fixture filing (the "2016 Mortgage"). The 2016 Mortgage encumbered real property in Dona Ana, Luna, and Sierra Counties, New Mexico, and was filed in those counties. The mortgaged property includes all of Debtor's water rights appurtenant to the mortgaged land, including certain rights identified by the water permit number.

Met Life filed change of ownership forms with the Office of the State Engineer ("OSE") for some of the encumbered water rights and recorded two change of ownership forms in Dona Ana County. No other change of ownership forms were recorded in any county.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, discovery papers, admissions, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. (made applicable in adversary proceedings by Fed. R. Bankr. P. 7056). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, the non-moving party "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). The non-moving party must show there is more than a mere "scintilla" of evidence and convince the Court that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. Expert Witness Affidavit.

The Committee's cross-motion for summary judgment relies on an affidavit of John W. Utton. The affidavit contains expert opinions about water rights law, customary legal and

regulatory practices of water rights lawyers, and the purpose of the WRCOS (as defined below). Met Life objects to the Court considering the affidavit under Fed. R. Civ. P. 56(c)(2).

A party may support its motion for summary judgment by presenting an affidavit or declaration that is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."). When considering a summary judgment motion, the Court does not "weigh the evidence, assess the credibility of witnesses, or make factual findings." *Underberg v. United States*, 362 F. Supp. 2d 1278, 1284 (D.N.M. 2005). "Genuine issues of material fact are established only by admissible evidence." *In re Christensen*, 251 B.R. 441 (10th Cir. BAP 1999).

The Tenth Circuit has held that attorney expert testimony "is proper if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. The expert can *refer* to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict." *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 821 (10th Cir. 2012) (internal quotations and citations omitted).

Mr. Utton's affidavit opines about the proper interpretation of New Mexico statutes. It contains conclusions of law couched as factual assertions. As statutory interpretation is purely a question of law, Mr. Utton's opinions do not assist the Court in understanding the evidence or finding facts. The Court therefore will not consider the affidavit.

C.  11 U.S.C § 544(a)(3).

11 U.S.C. § 544(a) allows the trustee to avoid certain transfers of real property from the debtor for the benefit of the bankruptcy estate. In this case the Committee has been permitted to intervene in the action and is authorized to assert the trustee's "strong-arm" powers. Under § 544(a)(3), the Committee steps into the shoes of a hypothetical bona fide purchaser of the water rights and can avoid any transfer a bona fide purchaser could avoid under state law. *See Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir. 1991) ("At the time of bankruptcy filing, the trustee in bankruptcy assumes the position of a bona fide purchaser of real property from the debtor and may avoid any liens on the property that a bona fide purchaser could avoid."). What constitutes a "bona fide purchaser" is determined by state law. 5 Collier on Bankruptcy ¶ 544.05, n. 3 and accompanying text (16th ed.); *Crane v. Richardson (In re Crane)*, 742 F.3d 702, 706 (7th Cir. 2013); *In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y. 1996). In New Mexico, a bona fide purchaser is one who has given value for property and is without actual or constructive notice of the adverse claim. *Kokoricha v. Estate of Keiner*, 148 N.M. 322, 328 (Ct. App. 2010).

D.  The New Mexico Statutes at Issue.

   1.  The Recording Statute. New Mexico's recording statute, first enacted in 1886, provides:

> [a]ll deeds, mortgages, leases of an initial term plus option terms in excess of five years . . . and other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated.

N.M.S.A. § 14-9-1.

> Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording.

N.M.S.A. § 14-9-2.

> No deed, mortgage or other instrument in writing not recorded in accordance with Section 14-9-1 N.M.S.A. 1978 shall affect the title or rights to, in any real estate,

of any purchaser, mortgagee in good faith or judgment lien creditor, without knowledge of the existence of such unrecorded instruments.

N.M.S.A. § 14-9-3 (together with §§ 14-9-1 and 14-9-2, the "Recording Statute"). The Recording Statute applies to water rights because they are real property. *See Walker v. United States*, 142 N.M. 45, 56 (S. Ct. 2007) ("our courts have recognized water rights as real property interests to which all the rules of real property apply"); *New Mexico Prod. Co. v. New Mexico Power Co.*, 42 N.M. 311 (S. Ct. 1937) ("a water right, or an interest in water, is real property, and it is so treated under all the rules of law appertaining to such property").[3]

    2.    <u>The Water Right Change of Ownership Statute</u>. More than 100 years after the Recording Statute was passed, New Mexico enacted the following statute:

> In the event of any changes of ownership of a water right, whether by sale, gift or any other type of conveyance, affecting the title to a water right that has been permitted or licensed by the state engineer, has been declared with the state engineer or has been adjudicated and is evidenced by a subfile order, partial final decree, final decree or any other court order, the new owner of the water right shall file a change of ownership form with the state engineer. The form shall include all information conforming with water rights of record filed with the state engineer and shall be accompanied by a copy of a warranty deed or other instrument of conveyance. The new owner shall record a copy of the change of ownership form filed with the state engineer with the clerk of the county in which the water right will be located. The filing shall be public notice of the existence and contents of the instruments so recorded from the time of recording with the county clerk.

N.M.S.A. § 72-1-2.1 (the "WRCOS").

    3.    <u>The Legal Issues Before the Court</u>. Here, Met Life complied with the Recording Statute but not the WRCOS. The first question is whether the WRCOS applies to mortgages. The

---

[3] Similarly, interests in mineral rights are governed by the Recording Statute. *See Angle v. Slayton*, 102 N.M. 521, 523 (S. Ct. 1985) ("An interest in an oil and gas lease is considered in New Mexico to be an interest in real estate. The general recording provisions of [the Recording Statute] are therefore applicable.").

other question is whether noncompliance with the WRCOS would render Met Life's mortgages avoidable under 11 U.S.C. § 544(a)(3).

F.      The WRCOS Does Not Govern Mortgages.

Met Life argues that the WRCOS only applies to changes of ownership, not to encumbrances like mortgages, so it had no obligation to comply with the WRCOS.[4] The Committee argues that mortgages are indeed a type of conveyance governed by WRCOS. The Court has reviewed both statutes carefully and concludes, for the reasons set forth below, that the WRCOS does not apply to mortgages. Thus, Met Life's failure to comply with the statute had no effect on the validity of its lien on water rights.

1.      The Plain Language of the WRCOS Supports the Court's Interpretation. When interpreting statutes, the Court's purpose "is to ascertain and give effect to the intent of the Legislature." *State v. Cleve*, 127 N.M. 240, 243 (S. Ct. 1999). The Court looks first to the plain meaning because "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *Lopez v. Employment Sec. Div. of New Mexico Dep't of Labor*, 111 N.M. 104, 106 (S. Ct. 1990) ("Enactments of the legislature are to be interpreted to accord with common sense and reason."); *City Comm'n of Albuquerque v. State ex rel. Nichols*, 75 N.M. 438, 445 (S. Ct. 1965) (courts should construe statutes "in the most beneficial way of which their language is susceptible to prevent absurdity, hardships or injustice, to favor public convenience, and to oppose all prejudice to public interests."); *see also* A. Scalia & B. Garner,

---

[4] In New Mexico, a mortgage does not change the ownership of the encumbered property. *See, e.g., Slemmons v. Massie*, 102 N.M. 33, 34, (S. Ct. 1984) ("a mortgage is merely a lien and passes no title to the mortgaged property.").

Reading Law: The Interpretation of Legal Texts, ("Reading Law"), p. 69 (2012) (discussing the "Ordinary-Meaning" Canon).

The Committee argues that mortgages are a "type of conveyance affecting the title to a water right." It is correct that mortgages often use the term "conveyance."[5] Further, mortgages "affect title" to real property, including water rights. However, in the WRCOS the phrase "affecting title to a water right" does not modify "other type of conveyance." Rather, the first sentence of the statute should be read "in the event of any changes of ownership of a water right . . . affecting title to a water right that has been permitted or licensed by the state engineer . . . ." Omitted is the clause "whether by sale, gift or any other type of conveyance," which modifies "any changes of ownership." The Committee's interpretation rearranges the commas, thereby changing the sentence's meaning."[6] No typographical or drafting error justifies such a re-write. If the sentence is read without punctuation changes, it excludes mortgages from changes of ownership.

3. <u>Other Statutory Construction Canons Support the Court's Interpretation</u>. The canons of statutory construction assist courts in ascertaining a statute's meaning. *See People for Ethical Treatment of Animals, Inc. v. Miama Seaquarium*, 879 F.3d 1142, 1147 (11th Cir. 2018 ("our authority to interpret statutory language is constrained by the plain meaning of the statutory

---

[5] *Kuntsman v. Guaranteed Equities, Inc.*, 105 N.M. 49, 50 (S. Ct. 1986) (under New Mexico law a mortgage is defined as a "conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition."); *In re Borges*, 510 B.R. 306, 325 (10th Cir. BAP 2014). *See also In re Bolte*, 18 Haw. 241, 241 (1907) ("A mortgage is a conveyance of property as security."); *Walston v. Twiford*, 248 N.C. 691, 693 (1958) ("Since by definition a mortgage is a conveyance of property to secure the obligation of the mortgagor, it is necessary for the mortgage to identify the obligation secured."); *Sleeth v. Sampson*, 237 N.Y. 69, 72 (1923) ("A mortgage is a conveyance of an interest in real property . . . One who promises to make another the owner of a lien or charge upon land promises to make him the owner of an interest in land, and this is equivalent in effect to a promise to sell him such an interest.").

[6] The Committee reads the sentence as "in the event of any changes of ownership of a water right, whether by sale, gift or any other type of conveyance affecting title to a water right, that has been permitted or licensed by the state engineer . . .

language in the context of the entire statute, as assisted by the canons of statutory construction"); *Marbob Energy Corp. v. New Mexico Oil Conservation Com'n*, 146 N.M. 24, 28 (S. Ct. 2009) ("in discerning the Legislature's intent, we are aided by classic canons of statutory construction"); *see also* N.M.S.A. § 12-2a-1 et seq. (Uniform Statute and Rule Construction Act). The canons support the Court's conclusion that the WRCOS applies only to changes in ownership, not to mortgages.

        a.    <u>Last Antecedent Canon</u>. "A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." *See* Reading Law, p. 144; *Hale v. Basin Motor Co.*, 110 N.M. 314, 318 (S. Ct. 1990) (relying on a variation of the canon); *see also Lockhart v. United States*, 136 S. Ct. 958, 962–63 (2016) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote) (quoting *Reading Law*). The comma marks the end of the clause "whether by sale, gift or any other type of conveyance." Under the last antecedent rule, the clause modifies "any change in ownership," but not the following phrase "affecting the title to a water right."

        b.    *Ejusdem generis* <u>Canon</u>. "Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Reading Law, p. 199; *see also* N.M.S.A. § 12-2A-20(A)(2) ("the meaning of a general word or phrase following two or more specific words or phrases may be limited to the category established by the specific words or phrases."); *Unite New Mexico v. Oliver*, 2019 WL 475845, at *9 (N.M. S. Ct.) ("The rule of ejusdem generis requires, that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned."). Under this canon, the phrase "any

other type of conveyance" is limited to conveyances such as sales or gifts. That would exclude conveyances such as mortgages and involuntary liens.[7]

        c.      <u>The Harmonious-Reading Canon</u>. "The provisions of a text should be interpreted is a way that renders them compatible, not contradictory. Reading Law, p. 180; *see also New Mexico Pharm. Ass'n v. State*, 106 N.M. 73, 74 (S. Ct. 1987) ("In interpreting statutes, we should read the entire statute as a whole so that each provision may be considered in relation to every other part."). The end of the first sentence of the WRCOS directs the "new owner" to file the change of ownership form with the OSE. The third sentence directs the "new owner" to file a copy in the county recorder's office. An owner is "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested." Black's Law Dictionary (10th ed. 2014); *see also* N.M.S.A. § 48-7-1 ("In the absence of stipulation to the contrary, the mortgagor of real property shall have the right of possession."). Mortgagees cannot be viewed as "owners," let alone "new owners," under the statute. The Court's interpretation harmonizes the WRCOS.

        d.      <u>The Title and Headings Canon</u>. "The title and headings are permissible indicators of meaning." Reading Law, p. 221; *see also Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 289 P.3d 1232, 1238 (N.M. 2012) ("For the purpose of determining the legislative intent we may look to the title, and ordinarily it may be considered as a part of the act if necessary to its construction."). The title of the WRCOS is "Water rights; change in ownership; filing and recording; constructive notice." The title is persuasive authority that the legislature

---

[7] Black's Law Dictionary defines sale as "the transfer of property or title for a price" and gift as "[t]he voluntary transfer of property to another without compensation." Black's Law Dictionary (10th ed. 2014). As such, the phrase "any other type of conveyance" is limited to those conveyances that transfer the property itself and not conveyances that merely grant a security interest in the property.

intended to limit the scope of the Water Rights Recording Statute to transfers of title that change ownership.

        3.      <u>The Court's Interpretation is Consistent with the Purposes of the Statutes</u>.

            a.      <u>The Recording Statute</u>. The purpose of laws like the Recording Statute is to "protect innocent purchasers for value without notice of unrecorded instruments who have invested money in property." *Kuntsman v. Guaranteed Equities, Inc.*, 105 N.M. 49, 51 (S. Ct. 1986); *see also* Black's Law Dictionary (10th ed. 2014) (defining "Recording Act" as a statute that "establishes the requirements for recording a deed or other property interest and the standards for determining priorities between persons claiming interests in the same property . . . [the statute is] designed to protect bona fide purchasers from earlier unrecorded interests.").

Met Life complied with the Recording Statute by recording its mortgages in the proper county. There is no dispute that any buyer of Debtor's water rights encumbered by Met Life's mortgage lien would have notice of the lien. Thus, it is difficult for the Committee to argue that it stands in the shoes of a bona fide purchaser. Without that status, its § 544(a)(3) claim fails.

            b.      <u>The WRCOS</u>. In contrast to the Recording Statute, the Court deduces that WRCOS's purpose is to provide the OSE information about water rights ownership changes, so it can keep better track of and regulate water rights. Because there are so many mortgages, very few of which result in changes of ownership, it is logical to omit mortgages from the purview of the WRCOS.[8]

---

[8] Requiring mortgages to comply with the WRCOS adds nothing to the OSE knowledge about ownership. If a mortgage has to be foreclosed, the mortgagee would be required to record the special master's deed and file a change of ownership form with the OSE. Filing the mortgage before the special master's deed is not necessary.

4. <u>A State Regulation Supports the Court's Interpretation</u>. The OSE published the following regulation related to the WRCOS:

> **19.26.2.17 CHANGE OF OWNERSHIP:** In the event of any changes of ownership affecting the title to a declaration, permit, license, or adjudicated water right, the new owner shall file a change of ownership form with the state engineer. The new owner shall file a separate change of ownership for each declaration, permit, license, or adjudicated water right of record filed with the state engineer. Upon acceptance by the state engineer for filing, the new owner shall record a copy of the change of ownership form filed with the state engineer with the clerk of the county in which the declaration, permit, license, or adjudicated water right is located.
> **A. Form - content:** The new owner shall file a change of ownership in duplicate on a form prescribed by the state engineer. A change of ownership shall include the following information: the name of the owner of record, the name and address of the new owner, the state engineer file number, the diversion amount, the consumptive use amount, the purpose of use, the legal description of the place of use, the priority date(s), and any other information the state engineer deems necessary. . . .
>
> **C. Proof of ownership:** The new owner shall attach to the change of ownership form a copy of a warranty deed or other instrument of conveyance that has been duly recorded with the clerk of the county in which the declaration, permit, license, or adjudicated water right is located. The warranty deed or other instrument of conveyance shall show the ownership of the declaration, permit, license, or adjudicated water right in the name of the new owner. The state engineer will not accept for filing a change of ownership form that is not accompanied by a recorded instrument of conveyance.
>   **(1)** Acceptable instruments of conveyance for the purposes of this section include, but are not limited to, warranty deeds, special warranty deeds, quitclaim deeds, personal representative's deeds, special master's deeds, and tax deeds, where such instruments unconditionally convey present title to the declaration, permit, license, or adjudicated water right.
>   **(2)** Real estate installment sales contracts or memoranda of such contracts, mortgages, instruments conveying security interests, or other documents that do not on their face unconditionally convey present title to the declaration, permit, license, or adjudicated water right are not acceptable instruments of conveyance for the purposes of this section.

N.M. Admin. Code § 19.26.2. This regulation is consistent with the Court's interpretation of the statute. Here, there is no need to defer to the State Engineer's interpretation. *See Gila Res. Info. Project v. New Mexico Water Quality Control Comm'n*, 417 P.3d 369, 377 (S. Ct. 2018) ("we

defer to an agency interpretation when a statute is unclear or ambiguous); *see also Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) ("deference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity . . . where . . . the canons supply an answer, [deference] leaves the stage."). However, the regulation may be viewed as persuasive evidence supporting the Court's interpretation.[9]

F.      Met Life Would Prevail Even if the WRCOS Applied to Mortgages.

If the Committee's interpretation of the WRCOS were correct, i.e., that the statute applies to mortgages as well as deeds, it does not follow that Met Life's lien on water rights would be avoidable. While under the Committee's interpretation Met Life would be in noncompliance with the WRCOS, Met Life would still have complied with the Recording Statute. The Committee still would not be a bona fide purchaser. For the Committee to prevail, the Court would have to hold that the WRCOS requires treating the failure to record change of ownership forms as tantamount to failing to record anything, whether or not the conveyance deeds were in fact recorded.

The WRCOS is silent on the effect of noncompliance. The Committee's proposed penalty is severe. Without a clearer indication from the legislature, the Court will not to infer such a draconian penalty for what may almost be described as a technical lapse. It would turn the serious matter of public notice into a trap for the unwary, with little or no public benefit.

The last sentence of the WRCOS is very similar to N.M.S.A. § 14-9-2 ("Such records shall be notice to all the world . . . ."). What is lacking is a counterpart to N.M.S.A. § 14-9-3 (Unrecorded instruments; effect). The Committee cannot be faulted for reading the statute as it does, given the poor drafting. The Court concludes, however, that the legislature did not intend to have recorded

---

[9] The OSE apparently does not follow its regulation, because the office accepted a number of change of ownership forms from Met Life. The failure does not affect the Court's interpretation of the statute.

water rights deeds be deemed unrecorded as punishment for not recording the change in ownership forms. First, such a construction would bring the Recording Statute and the WRCOS in direct conflict. The duty of the Court is to harmonize the statutes if possible. *See* N.M.S.A. § 12-2A-10 ("If statutes appear to conflict, they must be construed, if possible, to give effect to each."). Second, such an interpretation would violate the Presumption Against Implied Repeal canon.[10] The Committee's reading of the WRCOS would result in a partial repeal of the Recording Statute. Finally, it seems much more likely that the legislature intended the OSE to sanction noncompliance, e.g., by refusing to acknowledge the change in ownership until the proper forms are filed.

### III. CONCLUSION

The WRCOS does not apply to mortgages, only actual transfers of ownership. Further, the statute has no penalty for noncompliance and treating a recorded mortgage as unrecorded seems unduly harsh. The Court therefore concludes that Met Life's failure to comply with the WRCOS does not give the Committee grounds to avoid Met Life's mortgage lien on water rights under § 544(a)(3). By a separate judgment, the Court will grant Met Life's motion for summary judgment on this discreet issue.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 8, 2019
Copies to: counsel of record

---

[10] "Repeals by implication are disfavored-'very much disfavored.' But a provision that flatly contradicts an earlier-enacted provision repeals it." Reading Law, p. 327.